# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MICHAEL LEAVELL, also known as MICHAEL
DARON-KEITH LEAVELL,

      Defendant-Appellant.

UNPUBLISHED
May 26, 2016

No. 325639
Wayne Circuit Court
LC No. 14-007187-FC

Before: OWENS, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of assault with intent to do great bodily harm, MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1]  The trial court sentenced defendant to 3½ to 10 years' imprisonment for the assault with intent to do great bodily harm conviction and two years' imprisonment for the felony-firearm conviction.  For the reasons set forth in this opinion, we affirm defendant's convictions and sentences.

## I. INCONSISTENT VERDICTS

On appeal, defendant first argues that he is entitled to reversal because the trial court rendered inconsistent verdicts.  We review de novo preserved claims of error premised on

---

[1] Defendant was initially charged with three counts of first-degree criminal sexual conduct (CSC 1), MCL 750.520b, assault with intent to murder, MCL 750.83, assault with a dangerous weapon (felonious assault), MCL 750.82, assault with intent to commit great bodily harm, felon in possession of a firearm, MCL 750.224f, and felony-firearm.  The trial judge found defendant guilty of assault with intent to commit great bodily harm, felon in possession of a firearm, and felony-firearm.  Defendant's felon in possession of a firearm conviction was dismissed before sentencing, when the trial judge learned that defendant's prior conviction had been a misdemeanor, and not a felony.

-1-

inconsistent verdicts, which are considered constitutional issues. *People v Russell*, 297 Mich App 707, 722; 825 NW2d 623 (2012). Inconsistent verdicts occur when a trial court's factual findings are inconsistent with the verdicts and the two cannot be "rationally reconciled." *People v Ellis*, 468 Mich 25, 27; 658 NW2d 142 (2003). While juries may render inconsistent or illogical verdicts, "a trial judge sitting as the trier of fact may not enter an inconsistent verdict." *Id*. at 26. If there is a factual inconsistency between the trial court's factual findings and its verdict, reversal is required. *People v Smith*, 231 Mich App 50, 53; 585 NW2d 755 (1998).

Defendant was acquitted of three counts of CSC 1, assault with intent to murder, and felonious assault, but convicted of assault with intent to do great bodily harm and felony-firearm, each charge arising from an alleged physical and sexual assault. Defendant argues that, because the trial court found part of the victim's testimony incredible, it was required to find all of her testimony incredible and acquit defendant on all of charges. According to defendant, a finding of not guilty on some charges but guilty on some others indicates that the judge made some type of "compromise." Defendant is correct that a trial court is not permitted to engage in compromise and order inconsistent verdicts. *Ellis*, 468 Mich at 26. However, contrary to defendant's argument, the trial judge could have properly found sufficient evidence to support each conviction while finding insufficient evidence to support the others without engaging in impermissible compromise. Although arising from the same transaction, the evidence necessary to support a conviction for each of these crimes varies significantly. Further, it is well-settled that judges sitting as a fact finder have "the right to disregard all or part of the testimony of a witness." *People v Goodchild*, 68 Mich App 226, 235; 242 NW2d 465 (1976). The trial court has a superior ability to evaluate witness credibility, and this Court will not second guess the trial court's witness credibility determinations. MCR 2.613(C); *People v Geno*, 261 Mich App 624, 629; 683 NW2d 687 (2004). The trial court could reasonably have believed part of the victim's testimony without believing all of it, and its acknowledgment that some of her testimony was inconsistent did not ultimately render its verdicts "inconsistent" with the facts.

The trial court's verdict of not guilty on the three counts of CSC 1 was consistent with the facts as found. CSC 1 is predicated on an act of "sexual penetration" with another person. MCL 750.520b(1). Here, the only evidence to support an act of sexual penetration was the victim's testimony. The trial court explicitly stated that it had not found the victim's testimony regarding the sexual assaults to be credible. Based on several inconsistencies in the victim's testimony, this finding was not unreasonable. The victim admitted that she did not allege one of the acts of oral sex or the attempted vaginal intercourse until her preliminary examination, despite the fact that she had been interviewed by police several times prior. Her trial testimony was inherently inconsistent, in that she provided at least two different orders of events. Additionally, although she testified that she had spit semen onto the carpet and defendant had removed her panties in the Sawyer Street house, the investigating officers did not find any evidence of semen or panties in the home.

Our review of the record evidence submitted leads us to conclude that the trial court's decision to find defendant guilty of assault with intent to commit great bodily harm and felony-firearm, but not guilty of assault with intent to murder, is rationally reconciled with the facts as found and not inherently inconsistent. Assault with intent to commit great bodily harm less than murder requires proof of (1) an assault, and (2) an intent to do great bodily harm less than murder. *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). An "assault" is

defined as "either an attempt to commit a battery or an unlawful act that placed another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). The offense is a specific intent crime and requires that the defendant intended to inflict serious injury of an aggravated nature. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). An actor's intent may be inferred from all of the facts and circumstances, and because of the difficulty in proving an actor's state of mind, minimal circumstantial evidence is sufficient. *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010). The elements of felony-firearm are that the defendant possessed a firearm during the commission or attempted commission of any felony other than those four enumerated in the statute. MCL 750.227b(1); *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

The victim testified that defendant held a gun to her head and threatened her. This conduct clearly constituted an assault. The act of displaying a weapon, on its own, implies a threat of violence and causes reasonable apprehension of an immediate battery. *People v Pace*, 102 Mich App 522, 534; 302 NW2d 216 (1980). The victim also testified that defendant hit her in the face and head with the butt of the gun, shot her in the leg, and pushed her down a flight of stairs. Her testimony was supported by her hospital records, blood spatter found in the home, and her boyfriend's testimony regarding her physical condition immediately after the incident. This evidence indicated that defendant intended to cause serious and aggravated injury, and was sufficient to prove the elements of assault with intent to do great bodily harm. *Parcha*, 227 Mich App at 239; *Brown*, 267 Mich App at 152. Further, because shooting the victim required the possession of a firearm, the evidence was also sufficient to support defendant's felony-firearm conviction.

The trial court's decision to acquit defendant of assault with intent to murder was also supported by the evidence. While assault with intent to do great bodily harm and assault with intent to murder are related crimes, the requisite specific intent for these two offenses differs. *Id.* at 147-148. Assault with intent to murder requires proof of (1) an assault, with (2) actual intent to kill, which, (3) if successful, would make the killing a murder. *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996). Thus, the specific intent to do great bodily harm, otherwise described as the intent to do serious injury of an aggravated nature, while sufficient to prove the crime of assault with intent to do bodily harm less than murder, is less than the specific intent to kill necessary to sustain a conviction of assault with intent to commit murder. *Brown*, 267 Mich App at 150. Although defendant's act of shooting the victim in the leg clearly evidenced an intent to seriously injure the victim, the fact that he did not shoot her in a more vital or vulnerable area supports the inference that he did not intend to kill her. This evidence is sufficient to support the trial judge's conclusion that the specific intent to murder had not been proven beyond a reasonable doubt.

Though defendant raises only a broad challenge to the trial court's alleged "inconsistent verdicts" without specific mention of the felonious assault acquittal, we find it important to note that the trial court's decision to acquit defendant on the felonious assault charge was, indeed, inconsistent with its factual findings. Felonious assault is an assault with a dangerous weapon and the intent to injure or place a victim in fear of an immediate battery. *Avant*, 235 Mich App at 505. A gun is a dangerous weapon. MCL 750.82. The trial court's decision to convict defendant of assault with intent to commit great bodily harm necessarily rested on a finding that defendant committed an assault. Similarly, defendant's felony-firearm conviction must have

included a finding that defendant possessed a firearm. The trial court concluded, while rendering its verdict, that defendant shot the victim with the gun, and did not provide an explanation for its decision to acquit defendant on the felonious assault charge. Because both elements of the felonious assault charge had been proven beyond a reasonable doubt, the trial court was required to find defendant guilty on that charge. *Ellis*, 468 Mich at 26.

Generally, reversal is required when there is a factual inconsistency between the trial court's factual findings and its verdict. *Smith*, 231 Mich App at 53. However, reversal is not required when the factual inconsistency results in an acquittal. *Ellis*, 468 Mich at 27-28. A trial court's "decision of not guilty, whether proper or not, is constitutionally protected by double jeopardy principles," and "a trial judge that rewards a defendant . . . by 'finding' him not guilty of a charge for which an acquittal is inconsistent with the court's factual findings cannot be corrected on appeal." *Id*. at 26, 28. Because defendant was ultimately acquitted of the felonious assault charge, he is not entitled to reversal.

## II. SENTENCING ERRORS

Next, defendant argues that he is entitled to resentencing in light of the trial court's erroneous assessment of offense variables (OVs) 4 and 10 at sentencing. Although we agree that the trial court erred in its assessment of both OV 4 and OV 10, we find that the error was harmless and defendant is not entitled to resentencing.

Although defendant preserved his challenge to the trial court's assessment of OV 4 by objecting at sentencing, he did not object to the trial court's assessment of OV 10. Nor did he preserve his objection to OV 10 by raising it in a motion for resentencing or a motion to remand filed with this Court. MCL 769.34(10); *People v Kimble*, 470 Mich 305, 311-312; 684 NW2d 669 (2004). Therefore, defendant's claim of error with respect to OV 4 is preserved, while his claim of error regarding OV 10 is unpreserved.

This Court reviews for clear error the trial court's factual determinations at sentencing, which must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Whether the factual determinations were sufficient to assess the offense variables is a question this Court reviews de novo. *Id*. See *People v Steanhouse*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 19 (holding that because scoring the offense variables remains relevant under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), the standards of review traditionally applied to the trial court's scoring of the offense variables remain viable). This Court also reviews de novo, as a question of law, the proper interpretation of the sentencing guidelines. *People v Gullett*, 277 Mich App 214, 217; 744 NW2d 200 (2007). This Court reviews unpreserved constitutional issues for plain error affecting defendant's substantial rights. *Akins*, 259 Mich App at 567.

### A. OV 4

"Offense variable 4 is psychological injury to a victim." MCL 777.34(1). The sentencing court must assess 10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim[,]" and zero points if "[n]o serious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1). Whether the victim has already

sought treatment does not determine whether the injury may require professional treatment in the future. MCL 777.34(2); *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated. *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013). However, "[t]he trial court may not simply assume that someone in the victim's position would have suffered psychological harm because MCL 777.34 requires that serious psychological injury occurred to a victim," and there must be record evidence to support such a finding. *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012).

> At sentencing, the trial judge assessed OV 4 at 10 points, over objection, explaining:

> I will find that based on the extent of injuries and the testimony of [the victim] at trial, there would be traumatic injury in the way of psychological problems. Sometimes victims can suffer post-traumatic stress even a lengthy period of time after the occurrence. So, given the nature of the injuries and the concerns about the situation, I think that's sufficient to satisfy the requirements of OV 4.

The trial judge clearly erred in its assessment of OV 4, relying on the victim's physical injuries to infer the possibility of psychological injury. The trial judge assumed that, because someone in the victim's position could suffer some type of psychological harm, the victim could also suffer such harm, but the trial judge's conclusion was not supported by the record evidence. There was no testimony indicating that she suffered any psychological effects, mood changes, or negative feelings. The record does not contain a victim impact statement. There must be some evidence of psychological injury on the record to justify an assessment of 10 points. *People v Hicks*, 259 Mich App 518, 535; 675 NW2d 599 (2003). We have found no such evidence, and concluded that OV 4 should therefore have been assessed at zero points. MCL 777.34(1).

## B. OV 10

"Offense variable 10 is exploitation of a vulnerable victim." MCL 777.40(1). A trial court properly assesses 10 points for OV 10 when "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b).

Defendant accurately asserts that the record is devoid of any evidence to support the trial court's assessment of 10 points for OV 10. There was no testimony or other evidence suggesting that the victim was a particularly vulnerable victim, or that defendant abused a position of authority. The trial court clearly erred when it assessed OV 10 at 10 points. However, the error was harmless because, based on the nature of defendant's preoffense conduct, the trial court should have assessed OV 10 at 15 points.

A trial court must assess 15 points for OV 10 when "[p]redatory conduct was involved." MCL 777.40(1)(a); see also MCL 777.31(1) (directing that the "highest number of points" possible be assessed for each OV); *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015) (noting that its holding "[did] nothing to undercut the requirement that the highest number of points possible must be assessed for all OVs, whether using judge-found facts or not.")

"Predatory conduct" is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). "Predatory conduct" includes those forms of "preoffense conduct" that are commonly understood as being "predatory" in nature, e.g., lying in wait and stalking, as opposed to purely opportunistic criminal conduct. *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011), citing *People v Cannon*, 481 Mich 152, 162; 749 NW2d 257 (2008). The timing and location of an offense can be evidence of predatory conduct. See *Huston*, 489 Mich at 467–468 (affirming a score of 15 points for OV 10 when the victim was walking alone at night); *People v Kosik*, 303 Mich App 146, 160; 841 NW2d 906 (2013) (affirming a score of 15 points for OV 10 when the defendant waited to assault the victim until she was alone in an isolated area). The relevant questions are whether the offender engaged in conduct before the commission of the offense, whether such conduct was directed at a vulnerable victim, and whether victimization was the offender's primary purpose for engaging in the conduct. *Cannon*, 481 Mich at 162. Importantly, "the victim does not have to be inherently vulnerable." *Huston*, 489 Mich at 468. Rather, "a defendant's 'predatory conduct,' by that conduct alone [], can create or enhance a victim's 'vulnerability.'" *Id*. For example, "a person walking alone at night in a parking lot while two armed people hidden from that person's view lie in wait to rob that person is a vulnerable victim because he or she would have a readily apparent susceptibility to injury or physical restraint." *Huston*, 489 Mich at 467 (internal quotations and brackets omitted).

The record presents ample evidence that defendant's offenses involved "predatory conduct." The victim's testimony was sufficient to prove that defendant befriended the victim on a social networking site, and propositioned her for an exchange of sex and money. Once he had gotten her to pick him up, he directed her to drive to an abandoned house on the pretext of picking up some marijuana from a friend. Defendant lured the victim, alone and unprotected, inside a vacant house and upstairs into a bedroom in order to assault her physically and sexually. The circumstances of defendant's offense rendered the victim particularly susceptible to defendant's attack. The evidence demonstrated that defendant did not spontaneously commit the assaults on the victim, but developed that intention over time. Defendant engaged in a course of predatory conduct that made "the victim an easier target" for both the physical and sexual assaults. *Cannon*, 481 Mich at 161. Therefore, the trial court should have assessed OV 10 at 15 points.

## C. RESENTENCING

The trial court assessed the guidelines only for defendant's assault with intent to do great bodily harm conviction. Assault with intent to do great bodily harm is a Class D offense. MCL 777.16y. Defendant's total OV score of 85 included the trial court's assessment of 10 points for OV 4 and 10 points for OV 10, and placed defendant within the cell of the sentencing grid for OV Level VI. After a reduction of 10 points for the trial court's improper assessment of OV 4 and addition of five points for the trial court's improper assessment of OV 10, defendant's total OV score is properly adjusted to 80 points. A total OV score of 80 points does not change defendant's OV Level from VI, and defendant's sentencing guidelines range remains the same.

Because the trial court's error did not affect the ultimate sentencing guidelines range, defendant is not entitled to resentencing. *Armstrong*, 305 Mich App at 248.[2]

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also claims that the trial court's failure to object to the trial court's improper assessment of OV 10 constituted ineffective assistance of counsel. Defendant failed to preserve this issue by bringing a timely motion for a new trial or for a *Ginther*[3] hearing in the lower court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). This Court's review of unpreserved ineffective assistance of counsel claims is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "[T]his Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

"To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *Riley*, 468 Mich at 142.

Defendant's ineffective assistance of counsel claim fails because defendant cannot prove that he suffered prejudice as a result of defense counsel's error. As previously discussed, an objection to the trial court's assessment of OV 10 should properly have resulted in a higher assessment for that OV. Had defendant's objection resulted in a different outcome, that outcome would have been a *higher* OV score. Any OV score higher than 74 would have resulted in sentencing as an OV Level VI offender, and defendant's sentencing guidelines were ultimately unaffected by defense counsel's failure to object to the trial court's assessment of OV 10. Because defense counsel's error did not result in prejudice, defendant's ineffective assistance of counsel claim fails. Accordingly, defendant is not entitled to relief on this issue.

---

[2] We acknowledge language in *People v Blevins*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 315774); slip op at 10, suggesting that "in the wake of *Lockridge*, improperly calculated sentencing guidelines ranges are reviewed for harmlessness, which necessitates remanding for possible resentencing pursuant to *United States v Crosby*, 397 F3d 103 (CA 2, 2005), as described in *Lockridge*." However, because *Blevins* involved challenges to the sentencing court's use of judge-found facts, we find this language inapplicable in situations where, as here, the defendant challenges the assessment of sentencing guidelines for reasons unrelated to judicial fact-finding.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Affirmed.

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens