*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MORIO SENIPH OLIVER,

        Defendant-Appellant.

UNPUBLISHED
October 29, 2020

No. 349739
Wayne Circuit Court
LC No. 19-000333-01-FH

Before: METER, P.J., and SHAPIRO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions for assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, and assault with a dangerous weapon (felonious assault), MCL 750.82. Defendant was sentenced to 34 months to 10 years of imprisonment for AWIGBH and 14 months to 4 years of imprisonment for felonious assault. We affirm in part and vacate in part.

## I. FACTS

This case arises out of an altercation that culminated in defendant hitting the victim, Dedrick Cottman, with his vehicle. Defendant and Cottman had been friends since childhood. On the day of the incident, defendant, his wife Latrice Oliver, Cottman, and Cottman's girlfriend LaToya Webster, were spending time at the home of Cottman and Webster. Everyone was drinking alcohol. An altercation occurred between Cottman and defendant, which progressed until both men were outside fighting. The altercation escalated and defendant drove off in his SUV. Defendant drove to the end of the street, made a U-turn, and headed back toward the house. Cottman was standing near the sidewalk when defendant drove his SUV over the curb and hit Cottman. Cottman flew over the vehicle and hit the ground rendering him unconscious for more than a week.

## II. ANALYSIS

Defendant first argues that the prosecution presented insufficient evidence to rebut the evidence that he acted in defense of himself and Oliver; therefore, his convictions and sentences must be vacated. We disagree.

We review de novo a challenge regarding the sufficiency of the evidence and consider whether the evidence, viewed in a light most favorable to the prosecution, would warrant a reasonable juror in finding that the essential elements of the crime were proved beyond a reasonable doubt. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002); *People v Jackson*, 292 Mich App 583, 587; 808 NW2d 541 (2011). Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). Furthermore, we will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Self-defense is an affirmative defense. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010). "In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *People v Guajardo*, 300 Mich App 26, 35, 832 NW2d 409 (2013). "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (citation and quotation marks omitted).

At trial, defendant testified that, while at Cottman's house, Cottman got into an argument with Webster, and defendant tried to remedy the situation by taking Cottman outside. As a result, Cottman got upset with defendant because defendant "put [his] hands on him and forced him outside[.]" The argument escalated and defendant and Cottman got into a physical altercation on the porch and rolled down the steps. Defendant hit Cottman, and as a result, Cottman jumped up and pulled a gun out. Defendant told Cottman not to shoot him and ran to his vehicle. While running, defendant heard a gunshot. At this point, defendant feared for his life. Defendant jumped in his vehicle and drove off. In his rearview mirror, defendant saw Oliver and Cottman arguing. Cottman pushed Oliver causing her to fall over while Cottman still had the gun in his hand. Defendant did not know if Cottman would kill Oliver, so he made a U-turn and went back to get Oliver. Cottman stepped into the street, pointed the gun at defendant, and defendant hit Cottman with his vehicle. Defendant testified that he was afraid for his and Oliver's lives. Oliver also testified consistent with defendant's testimony, asserting that defendant tried to break up a fight between Webster and Cottman. Although Oliver did not see Cottman fire the gun because she was inside at that moment, she saw that he had a gun when he pushed her onto the ground and pointed the gun at defendant's SUV.

The prosecution presented testimony from Cottman and Webster that defendant was intoxicated and started a confrontation between Cottman and defendant. After Cottman told defendant to leave, defendant continued the altercation outside and the two men continued to fight. Defendant got into his vehicle alone, drove down the street, and made a U-turn. When he came back, he was driving fast, his vehicle went over the curb, and he hit Cottman where he was standing near the sidewalk. Both Cottman and Webster testified that neither of them had a gun in the house, Cottman never had a gun during the altercation, and no shots were fired. Cottman never threatened

defendant. Neither Cottman nor Webster testified that Cottman shoved Oliver and stood over her. In addition, the prosecution presented evidence to support that no gun was present. There was no indication that a gun had been fired and there were no shell casings found at the scene.

The trial court found Webster and Cottman to be more credible than defendant and Oliver. The trial court also found that the physical evidence supported testimony from Webster and Cottman that he did not have a gun on him that day or that he fired a gun. Credibility is for the fact-finder to weigh, and this Court will not interfere with the trier of fact's role of determining the credibility of witnesses. *Kanaan*, 278 Mich App at 619. Thus, the prosecution presented sufficient evidence that Cottman did not have a gun, never threatened defendant or Oliver, and did not point a gun at defendant making it necessary for defendant to hit Cottman in order to prevent death or bodily harm to himself or Oliver. Therefore, the prosecution proved, beyond a reasonable doubt, that defendant did not act in defense of himself or Oliver. *Stevens*, 306 Mich App at 630.

Defendant further argues that because the prosecution failed to prove that defendant did not act in defense of himself or Oliver, the prosecution failed to establish the intent elements of both crimes. In addition, *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999) (the elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery); *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (the elements of AWIGBH are: (1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder). As stated above, the prosecution presented sufficient evidence to rebut that defendant acted in defense of himself or Oliver. Additionally, self-defense is an affirmative defense. *Dupree*, 486 Mich at 707. "An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it. . . . It does not negate selected elements or facts of the crime." *Guajardo*, 300 Mich App at 35 n 1 (citation and quotation marks omitted). By asserting the affirmative defense of self-defense or defense of another, defendant admitted to the elements of the crimes but claimed to have acted in a justifiable manner. Therefore, defendant's argument that the prosecution failed to prove the requisite intent elements of the crimes is without merit.

Defendant next raises the unpreserved argument that his convictions for both AWIGBH and felonious assault for a single act resulted in inconsistent verdicts. We agree.

We review de novo questions regarding inconsistent verdicts, which are constitutional issues. *Russell*, 297 Mich App at 722. However, unpreserved claims are reviewed for plain error which occurs when three requirements are met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

"Under Michigan law, each count of an indictment is regarded as if it were a separate indictment and consistency in jury verdicts is not necessary." *Russell*, 297 Mich App at 722. "[I]t is possible for a jury to reach separate conclusions on an identical element of two different offenses." *Id*. at 722-723. However, " 'a trial judge sitting as the trier of fact may not enter an inconsistent verdict.' " *People v Ellis*, 468 Mich 25, 26; 658 NW2d 142 (2003), quoting *People v Walker*, 461 Mich 908, 908; 603 NW2d 784 (1999).

In *People v McKewen*, 326 Mich App 342, 351-358; 926 NW2d 888 (2018), application for leave to appeal held in abeyance 943 NW2d 381 (2020),[1] we addressed whether convictions for both AWIGBH and felonious assault arising from a single assault are inconsistent and stated:

> The crime of assault with intent to do great bodily harm is defined by MCL 750.84(1)(a). That statute provides that a person who "[a]ssaults another *with intent to do great bodily harm*, less than the crime of murder" is guilty of a felony. (emphasis added). The crime of felonious assault is defined by MCL 750.82(1), which provides that "a person who assaults another person with a . . . dangerous weapon *without intending to commit murder or to inflict great bodily harm less than murder* is guilty of a felony. . . ." (Emphasis added). [*Id*. at 352 (citation omitted).]

> \* \* \*

> In this case, the trial court did not instruct the jury "regarding the lack of intent to do great bodily harm necessary to meet the statutory definition of [felonious assault]" because it is a "negative element" that need not be found by a jury. However, the trial court specifically instructed the jury that in order to convict defendant of AWIGBH, it had to find that he "intended to do great bodily harm." By convicting defendant on that charge, they made a finding—one we may not disturb—that defendant acted with the intent to do great bodily harm. But that finding is inconsistent with felonious assault as defined by MCL 750.82. We therefore conclude that the proper action for the trial court is to enter a judgment of conviction on the AWIGBH charge but not on the felonious-assault charge, even though the jury found defendant guilty of both. [*Id*. at 353 (citation omitted).]

Thus, we concluded that it is inconsistent to render verdicts for both AWIGBH and felonious assault. *Id*. We stated that, if the trial court had properly instructed the jury on the "negative" element of felonious assault, and thus made the jury aware of the inconsistency of the two verdicts, we would not disturb the jury's verdict of felonious assault because juries are allowed to render inconsistent verdicts. *Id*. at 356. We nonetheless determined that it is inconsistent to render verdicts for both AWIGBH and felonious assault. *Id*. at 353. Although juries may render inconsistent verdicts, trial judges may not. *Ellis*, 468 Mich at 26. Therefore, we vacate defendant's conviction and sentence for felonious assault.

On appeal, the prosecution argues that, under *Doss*, 406 Mich at 96-99, the verdicts for AWIGBH and felonious assault were not inconsistent. We addressed this same issue in *McKewen* and distinguished *Doss* from both *McKewen*, stating: "[f]irst, *Doss* did not involve review of a judgment of conviction and the underlying jury verdict; the only issue was whether proof of the negative element was required to bind over the defendant on the charge of manslaughter."

---

[1] *McKewen* is currently pending in the Michigan Supreme Court. The Supreme Court is holding the application for leave to appeal in abeyance. *People v McKewen*, ___ Mich ___; 943 NW2d 381 (2020). However, at this time, our holding in *McKewen* is still binding precedent. MCR 7.215(C)(2) and (J)(1).

*McKewen*, 326 Mich App at 354. "Second, in *Doss*, the only crime at issue was manslaughter—the court was not considering how to address a jury verdict that convicted the defendant of both manslaughter and murder for the same killing. In other words, there was no issue of inconsistent verdicts in *Doss*." *Id*.

Here, the convictions resulted from one assault. In finding defendant guilty of AWIGBH, the trial court found that defendant struck Cottman intentionally, stating, "the striking was intentional. It wasn't an accident and that he did so and he intended to do him great bodily harm based on the speed of the car as shown by the injuries[.]" In finding defendant guilty of felonious assault, the trial court found "[d]efendant did use the motor vehicle in this case as a dangerous weapon, not as an automobile, and did make an assault or assault and battery upon [Cottman] and does find him guilty of Count II, [felonious assault]." The single act of striking Cottman with his vehicle was the basis for both convictions. Therefore, this case is analogous to *McKewen*, and under *McKewen*, we must vacate defendant's conviction and sentence for felonious assault. Therefore, we need not consider defendant's remaining unpreserved argument that his convictions for both AWIGBH and felonious assault for a single act violated his rights under the Double Jeopardy Clause.[2]

Defendant next argues that the trial court erred in scoring 25 points for OV 3 because there was no evidence that Cottman suffered life-threatening injuries. We disagree.

"A trial court's findings of fact at sentencing must be supported by a preponderance of the evidence; this Court reviews a trial court's findings of fact for clear error." *People v Maben*, 313 Mich App 545, 549; 884 NW2d 314 (2015). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Anderson*, 284 Mich App 11, 13; 772 NW2d 792 (2009) (citation and quotation marks omitted). We review de novo whether the facts are adequate to satisfy the statutory criteria for scoring the variable. *Maben*, 313 Mich App at 549.

When calculating the sentencing guidelines, a sentencing court may consider all record evidence before it, including the contents of a presentence investigation report, plea admissions, and testimony presented at a preliminary examination or trial. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). "[T]he trial court may rely on inferences that arise from the record evidence when making the findings underlying its scoring of offense variables." *People v McFarlane*, 325 Mich App 507, 532; 926 NW2d 339 (2018).

"OV 3 is governed by MCL 777.33, and addresses physical injury to victims." *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012). In scoring OV 3, the focus is not on the defendant's actions; rather, OV 3 assesses whether a victim's injuries were life-threatening.

---

[2] We nonetheless find this argument to be without merit. See *People v Strawther*, 480 Mich 900, 900; 739 NW2d 82 (2007) (holding that the defendant's convictions for both AWIGBH (MCL 750.84) and felonious assault (MCL 750.82) did not violate his double jeopardy protections); *McKewen*, 326, Mich App at 351-252 (rejecting the defendant's argument that his rights under the Double Jeopardy Clause were violated when he was convicted of both AWIGBH and felonious assault).

*People v Chaney*, 327 Mich App 586, 588; 935 NW2d 66 (2019). OV 3 is scored at 25 points when life threatening or permanent incapacitating injury occurred to a victim. *Id*. at 589. Ten points are assessed when bodily injury requiring medical treatment occurred to a victim. *Id*. We "must give effect to the ordinary meaning of 'life-threatening' by requiring some evidence indicating that the injuries were, in normal course, potentially fatal." *Chaney*, 200 Mich App at 590-591.

The trial court found that the evidence supported an assessment of 25 points, stating the following:

> [Cottman] actually received life threatening injury as a result of the automobile striking him that was being driven by the Defendant, that the victim was hit with sufficient force where he flew up in the air and flew a distance away from where his shoes landed, that he was knocked unconscious, that he received the injuries that have been detailed here as well as during the course of the trial.
>
> Based on the view of the photographs by the Court and the video or the body cam that was admitted into evidence and played at trial, that Mr. Cottman received more than bodily injuries simply requiring medical treatment, that at the time of the impact and for a significant period of time afterwards the injury he received was life threatening[.]

The evidence supports the trial court's findings and assessment of 25 points. During trial, testimony established that Cottman was hit with such force that he broke the windshield of the vehicle, flew over the vehicle, and landed face first on the ground knocking him unconscious for more than a week and causing bleeding on the brain and a fracture to the vertebra in his neck. See *People v Rosa*, 322 Mich App 726, 747; 913 NW2d 392 (2018) (concluding that, although strangulation would not always warrant a score of 25 points for OV 3, "when the evidence shows that the strangulation was severe enough and continued long enough such that the victim lost consciousness or control over bodily functions—albeit temporarily—it demonstrates that the anoxic injury was severe enough to be life-threatening."). Therefore, the trial court did not err in assessing 25 points for OV 3.

Defendant next argues in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, that because he was acquitted of felonious assault and assault or assault and battery, the trial court erroneously used conduct arising from that charge to assess 10 points for OV 9. We disagree.

"MCL 777.39 governs the scoring of OV 9 and provides in part that the trial court assess 10 points if '2 to 9 victims . . . were placed in danger of physical injury or death. . . .' " *People v Harverson*, 291 Mich App 171, 181; 804 NW2d 757 (2010), quoting MCL 777.39(1)(c). "For purposes of scoring this variable, a court is to count each person who was placed in danger of physical injury or loss of life or property during the transaction giving rise to the particular offense as a victim." *Id.* (citation omitted).

Defendant relies on *People v Beck*, 504 Mich 605, 626-629; 939 NW2d 213 (2019), in which our Supreme Court held that a trial court cannot make factual findings at sentencing based

on "acquitted conduct." *Id*. at 629. "Acquitted conduct means any conduct . . . underlying charges of which [the defendant] had been acquitted." *People v Roberts*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 339424); slip op at 4 (citation and quotations marks omitted). However, a trial court may still consider uncharged conduct. *Beck*, 504 Mich at 626-627. Although acquitted conduct "covers a broad range of conduct," *Beck* did not "preclude all consideration of the entire res gestae of an acquitted offense." *Roberts*, ___ Mich App at ___; slip op at 6.

Here, defendant was charged with felonious assault and assault or assault and battery for conduct relating to Webster who was standing next to Cottman when he was struck by defendant's vehicle. Webster testified that she would have been hit by defendant's vehicle if she had not moved. The trial court acquitted defendant of both charges relating to Webster and because it did not find, beyond a reasonable doubt, that defendant intended to put Webster in fear, but rather, all of defendant's actions were aimed at Cottman. During the sentencing hearing, the trial court assessed 10 points for OV 9, finding that, even if defendant was acquitted of the charges relating to Webster, she was a victim because "based on her proximity and the [d]efendant's actions she was placed in danger of injury or loss of life based on the closeness that she was to the [d]efendant's car at the time that he struck [Cottman]."

Felonious assault requires "the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). An assault is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (citation and quotation marks omitted). Therefore, the crimes of which defendant was acquitted required intent, either general or specific. The trial court did not assess defendant 10 points for OV 9 because of this acquitted conducted, but because Webster was placed in danger of injury or death when the offense was committed, which the court is required to consider when scoring OV 9. "[A] close proximity to a physically threatening situation may suffice to count the person as a victim." *People v Rodriguez*, 327 Mich App 573, 582; 935 NW2d 51 (2019) (citation and quotation marks omitted). Intent is not required to find that a person constituted a victim under OV 9. Thus, the trial court did not err in assessing 10 points for OV 9 because the evidence supported the trial court's finding that Webster was in close proximity to the offense and placed in danger of injury or death when the offense occurred.

III. CONCLUSION

We affirm defendant's conviction and sentence for AWIGBH, and vacate defendant's conviction and sentence for felonious assault.

/s/ Patrick M. Meter
/s/ Douglas B. Shapiro
/s/ Michael J. Riordan